IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 1:19-cv-00919-LTB

FT. COLLINS 8, L.L.C., a Washington limited liability company,

    Plaintiff,
v.

WALTON FOOTHILLS HOLDINGS VI, L.L.C., a Delaware limited liability company,

    Defendant.

___

ORDER
___

This matter is before me on the Motion to Dismiss filed by Defendant Walton Foothills Holdings VI, L.L.C. ECF No. 4. I have jurisdiction pursuant to 28 U.S.C. § 1332. After considering the parties' arguments and exhibits, I grant Defendant's Motion for the reasons set forth below.

## I.    FACTS

In November 2014, Defendant, as landlord, and Plaintiff, as tenant, entered into a lease for Plaintiff to operate a bar and restaurant in a shopping center in Fort Collins, Colorado. Compl. Declaratory J., ECF No. 6 at ¶¶ 2–6. The Retail Lease Agreement (the "Lease") signed by the parties included an "Exclusive Use" provision which prohibited Defendant from entering into another lease with a different tenant who intended to open a similar establishment as Plaintiff's:

    The Exclusive Use provision generally prohibits [Defendant] from

1

> entering into a "lease, purchase agreement or occupancy agreement for any space in the Shopping Center with any tenant or occupant or purchaser intending to use its premises for . . . (iii) a sports themed restaurant/bar larger than 5,000 square feet." This latter clause (iii) is defined in the CB & Potts Lease as the "Sports Bar Exclusive."

*Id.* at ¶¶ 5, 7; ECF No. 4-1 at 26–27. The next subsection of the Lease contains a "Rouge Tenant" provision, which limits remedies pending certain actions if the Exclusive Use provision is arguably breached:

> Subject to the last sentence of this subparagraph (b), Tenant shall have no remedy for a violation of subparagraph (a) above if: (i) another tenant or occupant of the Shopping Center violates a provision of its lease or license agreement, or other document burdening said tenant or occupant's premises or property, which either does not permit or specifically prohibits such violating tenant or occupant from engaging in the Exclusive Use; and (ii) after receiving written notice of such tenant or occupant's violation from Tenant, (A) Landlord provides written notice of the lease, license agreement or document violation to such other tenant or occupant; and (B) Landlord commences and diligently pursues all actions reasonably available to Landlord for the enforcement of the provisions of the lease, license, or other document. In such event ("Rogue Tenant Violation"), Landlord shall have a period of up to one year from receipt of the foregoing notice from Tenant within which to cure such violation of Tenant's Exclusive Use, and, in the event that at the end of such one-year period the Rogue Tenant Violation shall not be cured, Tenant shall have the right to pursue the remedies afforded to Tenant under this Agreement.

ECF No. 4-1 at 27.

In August 2018, Defendant and Green Screens, L.L.C., operating under the trade name "XGolf," entered into a lease (the "XGolf Lease") to open an establishment over 7,000 square feet in the same shopping center "for the purposes of operating [] indoor golf simulators, to include the sale of golf-related apparel, a 'fast casual' restaurant, and a bar." ECF No. 6 at ¶¶ 8–9. The XGolf Lease reads that XGolf "may not, among other restrictions, use its premises for 'a sports themed

2

restaurant/bar larger than 5,000 square feet.'" *Id.* at 10. In its Complaint, Plaintiff includes screenshots of various XGolf franchise webpages, including the Facebook page for the XGolf in Fort Collins. *Id.* at ¶¶ 14, 27, 29. On its Facebook page, the Fort Collins XGolf advertised using the hashtag moniker "#sportsbar," noted that it would have a "full bar with 12 taps for beer and 8 TVs," and featured cocktails and a bar in its photos. *Id.* at ¶¶ 29–31.

In December 2018, representatives of Plaintiff's parent company expressed concern to Defendant that XGolf's business would violate the Exclusive Use provision in the Lease. *Id.* at ¶ 11. Defendant responded that XGolf was "not a sports themed restaurant and bar." *Id.* at ¶ 12. During discussion between the parties, Plaintiff requested "a copy of any floor plan for the prospective XGolf facility, the number of seats, the number of [TVs], the location and type of video service to be used, the proposed menus for food and beverage, and whether XGolf intended to propose to offer a full bar serving liquor, beer and wine." *Id.* at ¶ 16. While the parties continued discussion, the information was not disclosed; construction of XGolf had a projected completion date of May 2019. *Id.* at ¶ 25.

Plaintiff filed suit in District Court of Larimer County, Colorado seeking declaratory judgment that: (1) the Fort Collins XGolf location contemplated in the XGolf lease is a "sports themed restaurant/bar larger than 5,000 square feet"; and (2) that Defendant subsequently violated the Exclusive Use provision in the Lease. *Id.* at 7. Defendant filed this Motion to Dismiss, arguing that Plaintiff's claims were not ripe and that Plaintiff failed to state a claim upon which relief could be granted.

3

ECF No. 4. Defendant then removed the case to this Court. Notice of Removal, ECF No. 1.

## II. LAW

As this is case proceeds under diversity jurisdiction, ECF No. 1 at ¶ 7, Colorado substantive law and federal procedural law applies. *Haberman v. The Hartford Ins. Grp.*, 443 F.3d 1257, 1264 (10th Cir. 2006).

### A. Ripeness

"The question of whether a claim is ripe for review bears on a court's subject matter jurisdiction under the case or controversy clause of Article III of the United States Constitution." *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1498–99 (10th Cir. 1995). A challenge to ripeness proceeds under Federal Rule of Civil Procedure 12(b)(1). *Id.* at 1499. The doctrine of ripeness intends to only allow for adjudication when a controversy is presented in a "clean-cut and concrete form." *Id.* (quoting *Renne v. Geary*, 501 U.S. 312, 322 (1991)). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation and internal quotation marks omitted).

### B. Declaratory Judgment Act

I proceed under the Declaratory Judgment Act, 28 U.S.C. § 2201, as it is procedural. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 199 (2014). Under the Declaratory Judgment Act, a court may consider issues of

4

contract construction that arise out of a justiciable controversy. *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1275 (10th Cir. 1989). I follow certain factors in determining whether I should exercise my discretion in making a declaratory judgment:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 980–81 (10th Cir. 2012) (quoting *State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979, 982–83 (10th Cir. 1994)).

### C. Contract interpretation

Under Colorado law, the well-established principles of contract interpretation apply, "common usage prevails, and 'strained constructions should be avoided.'" *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008) (quoting *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002)). A court will examine the entire contract as a whole without viewing clauses or phrases in isolation and more specific provisions control the effect of general provisions. *Id.* (citing cases).

5

### III. ANALYSIS

Defendant argues that the case is not ripe and that Plaintiff fails to state a claim for relief. ECF No. 4. As I find below that declaratory judgment would be inappropriate at this time, I do not consider whether Plaintiff sufficiently stated a claim under Rule 12(b)(6). *Kenney v. Helix TCS, Inc.*, 284 F. Supp. 3d 1186, 1188 (D. Colo. 2018) ("Where, as here, a defendant seeks dismissal under Rule 12(b)(1) and Rule 12(b)(6) in the alternative, 'the court must decide first the 12(b)(1) motion for the 12(b)(6) challenge would be moot if the court lacked subject matter jurisdiction.'") (quoting *Mounkes v. Conklin*, 922 F.Supp. 1501, 1506 (D. Kan. 1996)).

Defendant contends that this case is not yet ripe because the cure period in the Lease's Rogue Tenant provision is not yet satisfied. *Id.* at 6. It posits that the four conditions in the Rogue Tenant provision which allow for the limitation of liability are met: (1) Plaintiff alleged that XGolf violated a provision in the XGolf Lease; (2) the XGolf Lease has a provision that prohibits XGolf from engaging in Plaintiff's Exclusive Use—namely, operating a sports-themed bar or restaurant larger than 5,000 square feet; (3) after receiving written notice from Plaintiff of XGolf's alleged violation, Defendant notified XGolf of the alleged violation; and (4) Defendant has diligently pursued enforcement of the Lease. *Id.* at 6–7. The Lease reads that if these conditions are met, Defendant has up to one year from receipt of notice from Plaintiff to cure the violation to Plaintiff's Exclusive Use provision. *Id.* at 4. As notice from Plaintiff to Defendant occurred in December 2018, Defendant

contends that the Rogue Tenant provision is in force, that its time to cure is still active, and thus that this case is not currently ripe. ECF No. 4 at 7; ECF No. 6 at ¶ 11.

Plaintiff responds that the Rogue Tenant provisions have not been met. Pl.'s Resp., ECF No. 14 at 3. Plaintiff argues that Defendant breached the Exclusive Use provision in the Lease when Defendant signed a lease with XGolf, because XGolf intended to use its premises for a sports-themed restaurant or bar larger than 5,000 square feet. *Id.* Plaintiff clarifies that it brought this action as a declaratory judgment because XGolf has yet to begin operations and thus Plaintiff has yet to incur damages. *Id.*

I agree with Defendant. The first two conditions of the Rogue Tenant provision are satisfied. Plaintiff claims that it does not contend that XGolf is violating the XGolf Lease, so the Rogue Tenant provision should not trigger. *Id.* at 4. As to the second condition, Plaintiff adds that there are conflicting provisions in the XGolf Lease: one provision disallows XGolf to impede on Plaintiff's Exclusive Use, but other provisions contemplate that XGolf will operate a fast-casual restaurant and bar over 5,000 square feet. *Id.* at 4–5. Plaintiff contends that the former provision should be rendered moot by the latter. *Id.* at 5.

But the Lease reads that another tenant must violate "a provision of its lease . . . which either does not permit or specifically prohibits such violating tenant or occupant from engaging in the Exclusive Use." ECF No. 4-1 at 27. The XGolf Lease reads that XGolf "may not, among other restrictions, use its premises for 'a sports

7

themed restaurant/bar larger than 5,000 square feet.'" *Id.* at 10. Explained *supra*, the gravamen of Plaintiff's Complaint is that XGolf intends to operate a sports-themed restaurant or bar larger than 5,000 square feet. ECF No. 6 at ¶¶ 14, 27, 29–31. As such, the first two conditions are met.

To satisfy the next condition, after receiving written notice from Plaintiff of XGolf's alleged violation, Defendant must provide written notice of the lease violation to XGolf. ECF No. 4-1 at 27. Plaintiff notified Defendant of the alleged violation. ECF No. 6 at ¶ 11. Defendant notified XGolf that Plaintiff had brought this lawsuit, attached the Complaint, and wrote that "this shall serve as notice that [XGolf] will need to review and comply with the Lease in this regard." ECF No. 4-5. Plaintiff contends that this was insufficient because it did not note a specific violation in the XGolf Lease. ECF No. 14 at 5. However, the Complaint is attached to Defendant's letter to XGolf, which clearly spells out the alleged violation, and notes that XGolf must comply with the provisions of the XGolf Lease. ECF No. 4-5.

Finally, Defendant must "commence[] and diligently pursue[] all actions reasonably available to [Defendant] for the enforcement of the provisions of the lease . . . ." ECF No. 4-1 at 27. Plaintiff argues that this fourth condition is not met because Defendant's signing of the XGolf Lease and its position that XGolf's proposed business would not violate Plaintiff's Exclusive Use prove that Defendant is not sufficiently pursuing enforcement of the Lease's provisions. ECF No. 14 at 6. However, Defendant has partaken in a discussion about whether the Lease was violated and have attempted to work with Plaintiff on the issue. ECF No. 6 at ¶¶

8

12–23. Taking Plaintiff's allegations as true, Defendant has not been overwhelmingly helpful in communicating or providing requested information to Plaintiff. But that does not necessarily mean that Defendant is not enforcing the provisions of the XGolf Lease; it avers in its Reply that it "has been diligently pursuing all reasonable actions available to it through its myriad efforts to communicate and resolve these issues with both Plaintiff and XGolf, and continues to investigate this matter." ECF No. 15 at 7 (internal citations omitted).

Further, I agree with Defendant that when harmonizing provisions of the Lease, there would be little use for the Rogue Tenant provision if Plaintiff could immediately sue from a violation of the Exclusive Use provision. ECF No. 15 at 5–6. Plaintiff's main argument is that Defendant per se violated the Exclusive Use provision of the Lease when it signed the XGolf Lease. ECF No. 14 at 4. But, the Rogue Tenant provision reads that Plaintiff has no initial remedy for a violation of the Exclusive Use provision if the four conditions are met. ECF No. 4-1 at 27. The four conditions have been met, which means that a one-year cure period is in effect. Thus, a declaratory judgment would not settle the controversy because XGolf could cure its alleged violation before the cure period ends. As such, the case is not yet ripe and I decline to exercise my jurisdiction in making a declaratory judgment.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendant's Motion to Dismiss, ECF No. 4, is GRANTED, and the case be dismissed without prejudice, with parties to bear their own costs.

Dated: June 5, 2019 in Denver, Colorado.

BY THE COURT:

s/ Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE